BEFORE THE SECOND DIVISION, FEBRUARY 28, 1966

**No. 69811.**—Allied Chemical Corp., National Aniline Division, and Alltransport, Inc., et al. *v.* United States, protests 61/1772, etc. (New York).

Ford, Judge: The cases listed in schedule "A," attached hereto and made a part hereof, were the subject of decision reported as *Allied*

*Chemical Corp., National Aniline Division, and Alltransport, Inc., et al.* v. *United States*, 53 Cust. Ct. 233, Abstract 68680.

By timely motion for rehearing made on behalf of defendant and there being no objection on the part of the plaintiffs, a rehearing was granted and the case was subsequently submitted on the original record, plus a stipulation of fact entered into by and between counsel for the respective parties.

The merchandise involved herein consists of various items in chief value of metal which are parts of an article stipulated to be a machine known as a drawtwister. The competing paragraphs so far as is pertinent herein provide as follows:

Paragraph 372 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T.D. 51802:

Textile machinery, finished or unfinished, not specially provided for (except looms and machinery for making synthetic textile filaments, bands, strips, or sheets):
  For textile manufacturing or processing prior to the making of fabrics or woven, knit, crocheted, or felt articles not made from fabrics (except bleaching, printing, dyeing, or finishing machinery):

\* \* \* \* \* \* \*

  Other_____ 20% ad val.

\* \* \* \* \* \* \*

Parts, not specially provided for, wholly or in chief value of metal or porcelain, of articles provided for in any item 372 of this Part:

\* \* \* \* \* \* \*

  Other_____ The same rate of
  duty as the ar-
  ticles of which
  they are parts

Paragraph 372 of the Tariff Act of 1930, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, 91 Treas. Dec. 150, T.D. 54108:

Textile machinery, finished or unfinished, not specially provided for: Looms; machinery for making synthetic textile bands, filaments, sheets, or strips; machinery for manufacturing or processing wool fibers prior to the making of fabrics or crocheted, knit, woven, or felt articles not made from fabrics (except bleaching, printing, dyeing, or finishing machinery, and except worsted combs); and winding, beaming, warping, and slashing machinery and combinations thereof _____ 17% ad. val.

\* \* \* \* \* \* \*

Parts, not specially provided for, wholly on in chief value of metal or procelain, of any item provided for in any item 372 in this part. The rate for the article of w h i c h t h e y are parts.

In our original opinion, we made the following observations and conclusion:

It also appears that one of the primary requirements in nylon production is the drawability of the nylon. The nylon must be able to be drawn without filament breakage or a variety of other technical difficulties. Nylon in this undrawn state depreciates rather quickly and, if left in an undrawn condition for even 2 weeks, it would not be able to be used and pass product specifications. The filamentous structure which emerges from the spinneret in its undrawn condition is of no commercial value, except as hereinabove indicated. Certainly, a producer of nylon or other synthetic intends to produce a commercially acceptable product and not something which may only be sold to waste dealers or garnetters.

The operation of the drawtwister by the drawing operation (the stretching of the filamentous structure) gives dimensional stability and strength (by orientation of the molecular structure) to the product and thereby also creates a commercially acceptable nylon filament for the first time in the manufacturing process of said synthetic. The drawing is accomplished by the difference in speed between the godet wheels, and the twisting by the machine imparts 0.3 turns, which the witnesses testified is negligible. The intent and design of the machine are primarily to draw the nylon. There are certain machines which merely draw and wind the drawn nylon, but their operation is much slower than the drawtwister machine. While the amount of twist imparted to the filament may be adjusted on one of the drawtwister machines, the witnesses indicated that to actually twist the filaments would increase the cost and slow down the operation at this stage to such an extent that it would be economically unfeasible to operate.

The witnesses testified, and we agree, that the operation of the drawtwister machine is, in fact, the last stage in the "making" of nylon. They indicated that, subsequent to this operation, there are numerous things which may be done to filaments, such as twisting, slashing, plying, texturizing, production of novelty yarns, winding, warping, packaging and repackaging of yarns. These operations would, in our opinion, fall within the classified provision of paragraph 372, as modified, *supra*.

Defendant now urges our reconsideration of this matter, particularly in view of the stipulation of the parties which, so far as is relevant herein, reads as follows:

That prior to September 1, 1963 undrawn nylon filaments had no substantial or significant commercial usage in that condition; that subsequent to September 1, 1963 as a result of developments in existing manufacturing processes, undrawn nylon filaments have had a substantial or significant commercial usage in that condition in the manufacture of safety belts, ropes and harnesses and flocked carpeting.

The stipulation, insofar as the court is concerned, confirms its original position. The stipulation and the record as originally made

883

establish without contradiction that, prior to September 1, 1963, undrawn nylon had no substantial or significant commercial uses in such condition. What must of course be kept in mind is that the importation of the parts involved herein were prior to said date, as was the original trial.

Another factor to be considered is that the merchandise involved herein, at the time of importation, consisted of parts of drawtwister machines and not nylon filaments. It has been established that, on or about the date of importation, said machines worked on a filamentous structure which was not a commercially acceptable nylon filament. Consequently, a machine which performed work on such a filamentous structure was, in our opinion, one that in the end produced a nylon filament. Therefore, the imported articles fall within the category of parts of textile machinery for the making of synthetic textile filaments, as claimed.

The issue, as to what process nylon filaments may or may not be subjected to at a time remote from the date of importation and original trial, is not before us and will not be considered as affecting our original opinion.

The reasoning and conclusion reached in Abstract 68680 are, therefore, adhered to.

Judgment will be entered accordingly.